SHARP ELECTRONICS CORP, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consolidated Court No. 93–07–00384

(Dated August 12, 1996)

*Donovan, Leisure, Newton & Irvine (Peter J. Gartland, Christopher P. Johnson,* and *Fusae Nara)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(James A. Curley), Edward N. Maurer, Joan L. MacKenzie,* Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

## OPINION

RESTANI, *Judge:* This matter is before the court on a motion for summary judgment by plaintiff Sharp Electronics Corporation ("SEC") pursuant to USCIT Rule 56(a) and a cross-motion for summary judgment by defendant pursuant to USCIT Rule 56(b). Plaintiff contests the assessment of interest on the underpayment of antidumping duties applicable to television receivers that it imported from Japan between June 5, 1981 and August 28, 1989. Plaintiff argues that the assessment of interest by the United States Customs Service ("Customs") was impermissible as a matter of law because plaintiff made no cash deposits and instead, entered the merchandise under bond.

## BACKGROUND

On March 8, 1971, the United States Department of Treasury ("Treasury") issued a dumping finding for television sets from Japan. *See Antidumping; Television Receiving Sets, Monochrome and Color, from Japan,* 36 Fed. Reg. 4597 ("1971 Dumping Finding"). Pursuant to the 1971 Dumping Finding, the television receivers manufactured by Sharp Corporation ("Sharp") and imported by plaintiff became subject to antidumping duties. On April 28, 1980, SEC entered into an agreement with the United States, whereby SEC settled all pending claims for antidumping duties on such television entries. Pl.'s Mot. For Summ. J. at 2. With respect to television entries subsequent to March 31, 1979, the parties agreed that the appraisement of antidumping duties and liquidation of entries would be based upon transactional data submitted by SEC and Sharp pursuant to the administrative review process of the then-recently passed Trade Agreements Act of 1979 ("the 1979 Act"). *Id.* at 3.

Prior to the enactment of the 1979 Act, importers of merchandise subject to an antidumping duty order were required only to post security for potential duties, such as bonds. *See* S. Rep. No. 249, 96th Cong., 1st Sess. at 75 (1979), *reprinted in* 1979 U.S.C.C.A.N. 461, 481. The 1979 Act, however, required importers of merchandise subject to an antidumping

duty order to make a cash deposit of estimated antidumping duties and transferred responsibility for administering the antidumping duty laws from Treasury to the United States Department of Commerce ("Commerce"). For practical reasons, Treasury and Commerce decided 'that "[p]rior to the completion of the first administrative review of any such finding of dumping under section 751 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 * * *, merchandise subject to a finding of dumping in effect on January 1, 1980, shall continue to be entered under bond or other security." *Antidumping; Treatment of Merchandise Subject to a Finding of Dumping in Effect on January 1, 1980,* 45 Fed. Reg. 1084 (Dep't Treas. 1980). Accordingly, SEC was permitted to enter television receivers after January 1, 1980 under bonds.

On June 5, 1981, Commerce published the final results of its 'first administrative review of the 1971 Dumping Finding for television receivers the SEC entered between April 1, 1979 to March 31, 1980. *Television Receiving Sets, Monochrome and Color, from Japan,* 46 Fed. Reg. 30,163 (Dep't Comm. 1981) (final results). Commerce found only a *de minimis* margin of 0.30 percent for televisions manufactured by Sharp. *Id.* at 30,166. As a result, Commerce stated:

> Because the weighted average margins listed above for Hitachi, *Sharp* and Mitsubishi are less than 0.5 percent and therefore *de minimis,* the Department shall not require cash deposits on those manufacturers' entries. These deposit requirements, and waiver of deposit for General, Hitachi, *Sharp* and Mitsubishi, shall remain in effect until publication of the final results of the next administrative review.

*Id.* at 30,166–67 (emphasis added).

On August 28, 1989, Commerce published the final results of the second administrative review that was applicable to the television receivers SEC entered between April 1, 1980 and March 31, 1981. *Television Receivers, Monochrome and Color, from Japan,* 54 Fed. Reg. 35,517 (Dep't Comm. 1989) (final results). In that review, Commerce found a margin of 0.86 percent for Sharp television receivers. *Id.* at 35,524. Accordingly, plaintiff was required for the first time to make actual cash deposits for estimated antidumping duties for its entries of Sharp televisions made on or after August 28, 1989. *See id.*

On March 11, 1992, Customs issued liquidation instructions in accordance with Commerce's final results of the administrative reviews for television receivers entered between March 1, 1987 and February 29, 1988. Pl.'s Mot. For Summ. J., Ex. B. Similarly, liquidation instructions for merchandise entered during the periods of April 1, 1981 through February 28, 1986 and March 1, 1988 through February 28, 1989 were issued on November 19, 1992. *Id.,* Ex. C. With regard to the assessment of interest, the liquidation instructions provided:

> The assessment of antidumping duties by the Customs Service is subject to the provisions of Section 778 of the Tariff Act, which

requires interest on overpayments or underpayments of the amount deposited as estimated antidumping duties.

*Id.,* Ex. B ¶ 4, Ex. C ¶ 6. Thereafter, Customs assessed interest on the underpayment of antidumping duties for plaintiff's entries. SEC objected to the assessment of interest and filed a timely protest with Customs. In response, Customs issued a Headquarters Ruling, on December 17, 1992, setting forth Commerce's interpretation of 19 U.S.C. § 1677g as follows:

Commerce considers a *de minimis* margin to be equivalent to a zero dollar cash deposit. Although the cash deposit requirement of 0.30 percent was waived, the entry was nevertheless subject to a cash deposit requirement, albeit *de minimis,* and as such, interest would be owing to the government on any underpayment at the date of liquidation. As an antidumping duty of 38.26 percent was ultimately determined, interest is owed on the underpayment of duties on this amount deposited *(i.e.,* zero dollar) and the amount ultimately due.

*Id.,* Ex. D at 3 (HQ Ruling 224043). Customs thus denied SEC's protest. Plaintiff subsequently filed this action.

### JURISDICTION

SEC argues that the assessment of interest on antidumping duties is a protestable decision by Customs under 19 U.S.C. § 1514(a)(5) and asserts that this court thus has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a). *Id.* at 7–8 *(citing American Hi-Fi Int'l, Inc. v. United States,* Slip Op. 95–182 (Ct. Int'l Trade Nov. 16, 1995) (hereinafter *"American Hi-Fi I").* The court has recently determined that jurisdiction lies pursuant to 28 U.S.C. § 1581(i) for certain aspects of that challenge and pursuant to § 1581(a) for other aspects. *See American Hi-Fi Int'l, Inc. v. United States,* Slip Op. 96–121, at 7–13 (Ct. Int'l Trade Aug. 2, 1996) (hereinafter *"American Hi-Fi II").* As the facts and issues presented here are almost identical to those in *American Hi-Fi II,* the court adopts the reasoning therein.

### DISCUSSION

SEC contests the assessment of interest on the underpayment of antidumping duties for its merchandise on essentially the same grounds as the plaintiff in *American Hi-Fi.* Like the plaintiff in *American Hi-Fi,* SEC did not make an actual cash deposit of estimated antidumping duties. Here, as in *American Hi-Fi,* this category of merchandise was originally entered under bond pursuant to the Antidumping Act of 1921, which did not require the deposit of cash for potential antidumping duties. *See American Hi-Fi II,* Slip Op. 96–121, at 2–3. Following the first administrative review, American Hi-Fi was assessed a zero cash deposit rate and thus did not make a cash deposit; rather, it entered its merchandise under the continuous importation and entry bond applicable to ordinary duties. *Id.* at 8. In the instant case, SEC was assigned an

estimated deposit rate of 0.30 percent, which Commerce determined was *de minimis* and for which, no cash was required to be deposited.

The issue here, as was the case in *American Hi-Fi,* is whether Commerce may properly assess interest on the underpayment of antidumping duties under 19 U.S.C. § 1677g (1988), when no cash is deposited, but a duty order has issued for the subject product. The court finds no relevant distinction between a zero cash deposit rate and the waiver of a cash deposit for a *de minimis* margin. As there is no relevant distinction between the facts of *American Hi-Fi* and the instant case and the parties make essentially the same arguments raised in *American Hi-Fi II,* the court adopts the reasoning in that case and holds that Commerce properly assessed interest on SEC's entries. *See American Hi-Fi II,* Slip Op. 96–121, at 16–19.

Accordingly, summary judgment is granted for defendant.